Original



CLERK'S OFFICE
A TRUE COPY
Jul 19, 2024
s/JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>Records and information associated with the cellular device )<br>assigned (608) 391-0729, that is in the custody or control of )<br>Verizon, a wireless communications service provider that is )<br>located at 180 Washington Valley Road, Bedminster NJ. ) | Case No. **24-M-450 (SCD)** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____8-2-24_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____11/01/2024_____ .

Date and time issued:      _____7-19-24. 4:00 pm_____         *Stephen C. Dries*
                                                                                    *Judge's signature*

City and state:      _____Milwaukee, WI_____         Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned (608) 391-0729 (referred to herein and in Attachment B as "the Target Phone"), that is in the custody or control of Verizon (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is located at 180 Washington Valley Road, Bedminster NJ.

2. The Target Phone.

**Particular Things to Be Seized**

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Phone for the time period January 1, 2024, to PRESENT:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

ix. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

x. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Phone, including:

(A) Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and specialized location data including timing advance, RTT, LOCDBOR, or equivalent pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b. Information associated with each communication to and from the Target Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Phone.

c. Information about the location of the Target Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

3

i.     To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.     Information about the Target Phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, specialized location data including timing advance, RTT, LOCDBOR, or equivalent, and real time cell site information for 30 days beginning from the date the warrant was issued. This includes initiating a signal to determine the location of the Target Phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

iii.     This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Phone; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Phone; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Phone.

d.   The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or

4

representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

e. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of Daniel PHELPS regarding violations of Title 18 U.S.C. §§ 922(o) (Unlawful possession of Machinegun) and 922(a)(1) (Dealing in firearms without a License) since January 1, 2024, including but not limited to:

(a) Location information associated with the device to identify locations of sales and locations where firearms are likely made and stored, and other preparatory steps taken in furtherance of the crimes described herein;

(b) Evidence indicating how and when the device was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the device owner;

(c) Evidence indicating the device owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who used the device.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this warrant.

5

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jul 19, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Records and information associated with the cellular device assigned (608) 391-0729, that is in the custody or control of Verizon, a wireless communications service provider that is located at 180 Washington Valley Road, Bedminster NJ. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 24-M-450 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Unlawful possession of Machinegun |
| 18 U.S.C. § 922(a)(1)(A) | Dealing in firearms without a License |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 11/01/2024 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Matthew Bammert — Digitally signed by Matthew Bammert Date: 2024.07.18 13:09:09 -05'00'

*Applicant's signature*

Matthew Bammert, Special Agent - ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: 7-19-24

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Matthew Bammert, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1) I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (608)-391-0729 (the "Target Phone"). This information is in the custody or control of Verizon, a wireless telephone service provider located at 180 Washington Valley Road, Bedminster NJ. The Target Device is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2) The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

3) Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

4) I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), currently assigned to the Milwaukee Field Office. I

have been so employed since December 2023. My duties with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

5)      I completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia) and ATF's National Academy. The training included courses on constitutional law such as search and seizure, and conducting investigations through searches, arrests, interviews, surveillance, and evidence collection. The training also included firearms trafficking, drug trafficking, and firearms recognition. It covered an in depth break down of the requirements to possess, manufacture, deal, sell, and transfer National Firearms Act ("NFA") weapons and requirements for selling, dealing, and manufacturing firearms.

6)      Prior to joining ATF, I was a sworn Police Officer with the United States Secret Service Uniformed Division from September 2018 to December 2023. I completed approximately 29 weeks of training at the Federal Law Enforcement Training Center (Artesia, New Mexico) and the James J. Rowley Training Center. The training included courses on constitutional law such as search and seizure, conducting investigations through searches, arrests, interviews, surveillance, and evidence collection and police procedures.

7)      While with the Secret Service Uniformed Division I enforced both District of Columbia Code and United States Law. I served on the White House Patrol Unit from May of 2020 until May of 2022 and I served on the Counter Surveillance Division from May of 2022 until December of 2023. I also received a Citation for Valor and three individual special service awards. I also received approximately 6 additional weeks of training covering areas of Crisis Intervention, Civil Disturbance, Vulnerability Assessments, and Counter Suicide Bomber.

8)      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

2

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9)    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Daniel Raymond PHELPS (W/M DOB: 12/31/1968) has violated federal law, specifically, 18 U.S.C. §§ 922(o) (Unlawful possession of Machinegun) and 922(a)(1)(A) (Dealing in firearms without a License). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

10)    In or around May 2024, ATF agents learned from a cooperating defendant in a different matter that PHELPS had supplied firearms and machineguns to him. Specially, the cooperating defendant told agents that PHELPS had sold him approximately 20 firearms over the course of roughly 8 to 12 months. This information is at least partially corroborated by the fact that a firearm recovered from the cooperating defendant's residence was traced back to PHELPS as the initial purchaser. Other information the cooperating defendant provided, such as the location of PHELP's residence, was also corroborated. The cooperating defendant provided information to law enforcement for consideration in his pending federal criminal case in the Eastern District of Wisconsin for: illegal firearm possession and possession of a firearm in furtherance of a drug trafficking crime. His criminal history includes carrying a concealed weapon, carrying a concealed knife, terroristic threats, disorderly conduct and burglary.

11)    On July 10, 2024, a query was run to determine whether PEHLPS has or had a Federal Firearms License, and the query showed that PHELPS does not have a Federal Firearms

3

License registered in his name.

12) Agents have also learned that PHELPS does business on gunswisconsin.com, which is an online classifieds-style website for the sale and trade of firearms. His username on that website is his legal name.

13) PHELPS listed a contact number of (608)-391-0729 (Target Phone) on gunswisconsin.com.

## First Undercover Buy – June 25, 2024

14) On June 3, 2024, an ATF agent working undercover ("UC") sent a text message to PHELPS, on the Target Phone, asking about two firearms PHELPS had listed for sale on gunswisconsin.com: a 6.5 Grendel AR style rifle for $1,100, and a 12-gauge shotgun for $280. Through their text message communications PHELPS agreed to sell both firearms, at the price listed on the website. PHELPS agreed to meet the UC at a Walmart located at 2863 Heritage Drive, Delafield WI, on June 25, 2024, around 1:00 P.M.

15) On June 25, 2024, the UC reached out to PHELPS, via the Target Phone, through text message. PHELPS confirmed that he was on his way to the Walmart to meet with the UC. PHELPS later messaged the UC stating he was at the Walmart waiting in black Dodge truck.

16) At the meeting PHELPS sold the UC both firearms listed above and a Taurus 9mm pistol that PHELPS told the UC he was planning on selling to a different person in the Milwaukee area. Specifically, the firearms that the UC purchased from PHELPS at the meeting on June 25, 2024 included: an Anderson Manufacturing Model AM-15, multi-caliber rifle (a 6.5 Grendel AR style rifle), bearing serial number 20218227, for $1,100; a Sun City Machinery CO., LTD Model Stevens 320, caliber 12-gauge shotgun, bearing serial number 184374F, for $250; and Taurus Model PT111 Millennium G2, caliber: 9mm pistol, bearing serial number TKY87842, for $300.

4



Anderson Manufacturing Model AM-15 rifle



Sun City Machinery CO., LTD Model Stevens 320 shotgun



Taurus Model PT111 Millennium G2 pistol

17) Also, during the meeting PHELPS stated to the UC that he personally made the 6.5

Grendel AR style rifle using an Anderson Manufacturing AM-15 lower receiver because it allows

5

an individual to easily change the caliber. PHELPS explained that he has used an identical lower receiver before to make a .50 caliber rifle. PHELPS offered to change the caliber of the current rifle he was selling to the liking of the UC.

18)    The UC asked if PHELPS takes custom orders, and PHELPS stated that "It depends on what you want" and that he is "not a dealer" however he has sold and/or built custom-ordered firearms to/for other individuals. Further explaining that he is working on several "custom orders" placed by other individuals, PHELPS told the UC that "as of right now, I have five or six ARs that I'm building." He stated that one of these builds was "for a guy" and it is a ".50 caliber." PHELPS also stated he sells firearms to "a lot" of individuals in the Milwaukee and Oshkosh areas.

19)    The UC showed a video to PHELPS, on the UC's phone, of the UC shooting a fully automatic AR style firearm and PHELPS stated, "I don't want to brag about it too much because you never know who you're talking to, but I have made a few full-autos." PHELPS explained to the UC that you have to be careful on which barrel to use in building machineguns due to the heat buildup from the rapid firing of the machinegun. PHELPS also went on to describe the process, saying he would "mill" a "blank" lower receiver that did not have a serial number. He explained that he did not want the machineguns he manufactured to have serial numbers on them because "even if I sell it to somebody, no matter what happens ten years from now I don't want that serial number coming back to me, you know?" Based on my training and experience, I know that a firearm's serial number can be traced back to the first purchaser of the firearm. It is common for people dealing in illicit activities involving firearms to take actions to avoid having a serial number on a firearm in order to avoid detection by law enforcement.

6

20)     The UC asked PHELPS how much he sells machineguns for, to which PHELPS replied, "I've been selling them for about $1,500." The UC stated he/she would be interested in purchasing a machinegun from PHELPS. PHELPS agreed to meet with the UC in a couple of weeks to sell the UC a machinegun. PHELPS said he believed the manufacture would not take long because he had a surplus of the parts required to make it. PHELPS also offered to make a machinegun with a barrel length of 10.5" which the UC agreed to. Based on my training and experience I know that a rifle with a barrel length of less than 16" inches falls under the NFA category of a Short Barreled Rifle and requires a tax stamp to own, a specific NFA license to manufacture and sell, and a tax stamp to transfer the ownership of. Through an ATF database I know that PHELPS does not have the licenses to manufacture or deal in NFA weapons.

21)     PHELPS and the UC agreed to stay in contact to set up the future purchase of one machinegun and other additional firearms.

**Second Undercover Buy – July 10, 2024**

22)     On July 2, 2024, PHELPS reached out to the UC on the Target Phone, via text message, to ask what kind of scope he/she would like on a separate firearm PHELPS was selling to the UC and to state that PHELPS was still working on the machinegun. Then on July 3, 2024, PHELPS reached out to the UC, via text message, asking about a time frame on when the UC would want to buy the firearms from him and to tell the UC that he was still working on the machinegun.

23)     On July 4, 2024, PHELPS reached out again on the Target Phone, via text message, stating that the work on the machinegun was almost done. PHELPS asked the UC if he/she would like a laser sight on the machinegun. The UC agreed to have the laser sight put on it.

7

PHELPS also sent the below photo to the UC, using the Target Phone, to show the progress of the machinegun.



24) On July 8, 2024, the UC reached out to PHELPS on the Target Phone, via text message, to schedule the sale at the same Walmart as described above. PHELPS agreed to the meeting.

25) On July 10, 2024, ATF SAs surveilled PHELPS' residence, 4708 Robin Rd, Fennimore, WI 53809, and around approximately 1100 hours ATF SAs observed PHELPS backing up his truck out of the drive of his residence as the sole occupant of the vehicle. Shortly thereafter PHELPS reached out via the Target Phone to let the UC know he was headed to the Walmart. While under surveillance PHELPS made one stop at gas station in Fennimore. PHELPS arrived at the Walmart at approximately 1322 hours. PHELPS was also in the same vehicle and wearing the same clothes as when he was observed in Fennimore, WI. Based off of PHELPS' departure time observed by ATF SAs, PHELPS' arrival time observed by an ATF TFO, and Google mapping from PHELPS' residence in Fennimore to the Walmart in Delafield, it is unlikely that PHELPS made any additional stops.

26) During the buy the UC purchased one machinegun and two additional firearms from PHELPS. PHELPS explained to the UC how he made the machinegun and how he test fired

it to make sure it operated as a machinegun, firing multiple projectiles with a single trigger pull. PHELPS and the UC agreed to stay in contact, via the Target Phone, about setting up a future deal for more machineguns.

27)     The firearms bought during the second meeting on July 10, 2024, are as follows: Anderson Manufacturing Model AM-15 multi caliber rifle S/N: 21152490 purchased for $1,000; Palmetto State Armory Model: PA-10 multi caliber rifle S/N: PF059046 purchased for $1,500; and a Privately Manufactured Machinegun .556 with no serial number purchased for $1,500. Pictured below in order top to bottom.



28)     PHELPS has listed the Target Phone as his contact on gunswisconsin.com and used only that number to communicate with the UC. PHELPS has also stated to the UC that he sells to other individuals in Milwaukee and Oshkosh. Based off my training and experience, I know that illegal firearms dealing is often done through use of cellphones and cellphones can further the illegal activity of a person. Also being that PHELPS lives in Fennimore, WI and travels a distance to sell firearms, ping and cell data can help establish frequency of deals, who PHELPS is dealing with, and pattern of life.

9

## TECHNICAL INFORMATION

29)    In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

30)    Based on my training and experience, I know that Service Providers can collect cell-site data on a prospective basis about the Target Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this

10

information for various business-related purposes. If you sent a preservation request, include here the date you sent that request and any reference number provided.

31)    Based on my training and experience, I know that the Service Providers can collect per-call measurement data, which the Service Providers also refer to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

32)    Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

**E-911 Phase II / GPS Location Data**

33)    I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.

11

Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Providers can collect E-911 Phase II data about the location of the Target Phone, including by initiating a signal to determine the location of the Target Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

34)     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

35)     Based on my training and experience, I know that wireless providers such as the Service Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless

12

providers such as the Service Providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Phone's user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

36)     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the Target Phone, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

37)     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until November 1, 2024. This investigation is expected to remain covert at least until then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. There is, therefore, reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the

13

warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

38)     I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

39)     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Phone outside of daytime hours.

### CONCLUSION

40)     For the above reasons, there is probable cause to believe that PHELPS has committed felony violations of 18 U.S.C. §§ 922(o) (Unlawful possession of Machinegun) and 922(a)(1)(A) (Dealing in firearms without a License) and that the information described in Attachment B will assist law enforcement in understanding the scope of PHELP's activities including other sales, confirming his identity as the person connected to this phone, and determining locations of investigative interest.

14

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1. Records and information associated with the cellular device assigned (608) 391-0729 (referred to herein and in Attachment B as "the Target Phone"), that is in the custody or control of Verizon (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is located at 180 Washington Valley Road, Bedminster NJ.

2. The Target Phone.

**ATTACHMENT B**

**Particular Things to Be Seized**

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Phone for the time period January 1, 2024, to PRESENT:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii.  All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

ix.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

x.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Phone, including:

(A)  Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and specialized location data including timing advance, RTT, LOCDBOR, or equivalent pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b.  Information associated with each communication to and from the Target Phone for a period of 30 days from the date of this warrant, including:

i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.  Source and destination telephone numbers;

iii.  Date, time, and duration of communication; and

iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Phone.

c.  Information about the location of the Target Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

3

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. Information about the Target Phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, specialized location data including timing advance, RTT, LOCDBOR, or equivalent, and real time cell site information for 30 days beginning from the date the warrant was issued. This includes initiating a signal to determine the location of the Target Phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

iii. This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Phone; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Phone; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Phone.

d. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or

4

representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

e. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of Daniel PHELPS regarding violations of Title 18 U.S.C. §§ 922(o) (Unlawful possession of Machinegun) and 922(a)(1) (Dealing in firearms without a License) since January 1, 2024, including but not limited to:

(a) Location information associated with the device to identify locations of sales and locations where firearms are likely made and stored, and other preparatory steps taken in furtherance of the crimes described herein;

(b) Evidence indicating how and when the device was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the device owner;

(c) Evidence indicating the device owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who used the device.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this warrant.

5

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by Verizon, and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of

Verizon. The attached records consist of _____ **[GENERALLY DESCRIBE**

**RECORDS (pages/CDs/megabytes)]**. I further state that:

      a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of Verizon, and they were made by Verizon as a regular practice; and

      b.      such records were generated by Verizon's electronic process or system that

produces an accurate result, to wit:

            1.      the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of Verizon in a manner to ensure that they are true duplicates of the original

records; and

            2.      the process or system is regularly verified by Verizon and at all times

pertinent to the records certified here the process and system functioned properly and normally.

6

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                      Signature